UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CIV-24173-BLOOM/TORRES

VIKRAM SINGH,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

**PLAINTIFF, VIKRAM SINGH'S,
RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff, VIKRAM SINGH, by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and 11th Circuit controlling precedent, hereby responds to Defendant's Motion to Compel Arbitration and states as follows:

1. This matter presents a single count Complaint for "Intentional Infliction of Emotional Distress" as a consequence of Defendant's levying and suborning false accusations against Plaintiff, a long-time Chief Security Officer on Defendant's ships, luring Plaintiff to Defendant's headquarters under false pretenses, wrongful termination of Plaintiff, and knowing abandonment of Plaintiff who is in need of curative medical treatment.

2. **The 11th Circuit conclusively held that intentional tort claims are not subject to arbitration**, *Maglana, et al. v. Celebrity Cruises, Inc.,* Case No. 20-14206 (11th Cir. 2023); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011).

3. The facts giving rise to Plaintiff's claim for Intentional Infliction of Emotional Distress are not arbitrable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 USC §§ 202-208 (2002) (the "Convention"), the U.S. Constitution or Statutes, or General Maritime Law.

Case No. 23-CIV-22348-BLOOM/TORRES<br>Page 2

**FACTS GIVING RISE TO CLAIM FOR**
**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

Plaintiff, a long-time and loyal employee of Defendant, joined LUMINOSA on September 8, 2022 as Chief Security Officer. At the time, Plaintiff had undergone and passed a pre-employment physical examination and was declared fit for duty without restrictions.

On or about November 30, 2022, as a result of excessive, prolonged, and unreasonable periods of time standing and walking in order to complete the duties assigned to him by Defendant, Plaintiff to commenced to experience pain in the left heel.  As a result of continued and worsening symptoms and pain, Plaintiff presented to Defendant's infirmary on January 20, 2023 and, thereafter, on February 2, 2023, was referred ashore for an Orthopaedic consult.

Although the referral was made on February 2nd, it was not until February 13th that an MRI of the right ankle was ordered for February 19th and that Defendant arranged for Plaintiff to be seen ashore in Queensland, Australia by Dr. Steven Hatcher, on March 2, 2023.

Although Plaintiff necessitated curative treatment and was not at maximum medical improvement (MMI), nether the MRI nor the consult with Dr. Hatcher ever occurred.  Instead, on February 19, 2023 at 3:27am, Plaintiff received an email from his superior, Dominic Martis, in Defendant's office in Miami instructing him to disembark the ship that same day and fly to Miami "since you have vast experience on our Australian ships, we need you to come to our CCL Headquarters, signing off LU tomorrow to work with the new Security Training Specialists next week in the office on the training curriculum for our Australian ships. The Security Training specialists are currently at our office and will be here till early March" – this despite the fact that with his departure from the ship, there would be no one to fill his position and the ship would remain under-manned.  Plaintiff responded to Mr. Martis:

> FYI - presently I have only one ACSO and he is signing off today. Hopefully, his reliver will join today. I am suffering with heel pain and schedule for medical appointment ashore today. However, I will skip that medical appointment.

> After finishing training early March, I would like to return back to ship to get my remaining belongings and thereafter stay with my sons as I have important planned activities with them after I sign off on March 12, 2023. Please advise.

Although Plaintiff requested that he be allowed to return to Australia after his time at Defendant's office in Miami as he had booked his own return trip home to India, Defendant refused this and further instructed Plaintiff: "Also, I would suggest carrying all your belongings as you will sign off in Miami, considering you are so close to vacation."

Shortly following his ordered arrival in Miami, on February 20, 2023, Plaintiff received the following threatening message: "Why you came here in Mia, don't talk anything. Your family won't see you again. We know where you stay."

On the morning of February 21, 2023, upon arriving at Defendant's headquarters in Miami for the indicated training, Plaintiff was confronted by his superiors and Defendant's investigators, among them Dominic Martis, Arturo Loynaz, Scott Nelson, and John Butchko, and only then learned that he had been ordered to Miami under completely false pretenses. Instead, his superiors and the investigators falsely accused Plaintiff of the improper touching of Housekeeping Attendant Imee Lucero and of introducing Ms. Lucero to Captain Carmelo Marino. During the course of that day's "investigation" during which Plaintiff was confined to Defendant's offices and not allowed to leave, Defendant asked Plaintiff to provide a written statement, which he did. Dissatisfied with Plaintiff's statement, Defendant's investigative team tore the statement up and forced Plaintiff to write another one with verbiage dictated by Mr. Loynaz. Plaintiff was then ordered home by his superiors.

Upon return home to India, on February 25, 2023, Plaintiff provided a detailed summary of events and circumstances surrounding the false accusations of Ms. Lucero. On February 26, 2023, Plaintiff provided even further information in response to further inquiry from Mr. Loynaz.

Rather than conducting an honest and good faith investigation into the meritless accusations, on February 28, 2023, Mr. Loynaz instructed Plaintiff:

We decided that it is best for you to retire and move on with your life. CPS was changed to show you as retired since 02/23/23. I thank you for your service and dedication to CCL and wish you the best in all future endeavors. Please reach out to HR (Scott in copy) for guidance on the retirement process. Thank you.

This wrongful termination under the guise of "retirement" was solely in retaliation to Plaintiff exercising his right to request a fair, impartial, and thorough investigation of the false claims against him; Plaintiff's refusal to accept the railroading by Defendant's employees in Miami, and Plaintiff's need for curative medical treatment. At the time of this wrongful/retaliatory termination Plaintiff was in need of curative medical treatment and was not at maximum medical improvement (MMI), making Defendant's conduct and actions that much more extreme and outrageous.

On February 28, 2023, following his wrongful termination, Plaintiff wrote to Defendant, including its on-call crew medical department advising of his continued need for immediate medical care:

> Requesting for your help. While on board Carnival Luminosa, I develop pain in my left heel, to which I was sent ashore at Wesley hospital in Brisbane (Australia) on Feb 02, 2023. After diagnoses, I was given medication for a month but there was no improvement in my pain. Senior Doctor David of Carnival Luminosa was kind enough to follow up about my treatment and he scheduled another appointment on Feb 19, 2023 for my MRI followed by orthopedic appointment on March 02, 2023.
>
> While the vessel was pulling in port of Brisbane on Feb 19, 2023, I was advised with very short notice (email received at 3:37 AM on Feb 19, 2023) by our Manager Dominic Martis to disembark Carnival Luminosa at Brisbane on same date (Feb 19,2023) and fly out of Australia asserting that i have "vast experience on our Australian ships, we need you to come to our CCL Headquarters, signing off LU tomorrow to work with the new Security Training Specialists next week in the office on the training curriculum for our Australian ships".
>
> I followed the instructions of my boss and disembarked after advising him about my medical appointments and presumed that I will continue treatment after my return.
>
> While in Miami office, I was advised to take retirement due to undisclosed reasons. Presently, I am suffering from severe pain in both heels. Please provide me medical treatment here in India.

Having received no response from Defendant, on March 2, 2023, Plaintiff followed upon his

request for needed medical care. Again, having received no response from Defendant, on March 28, 2023, Plaintiff followed upon his request for needed medical care.

Having been wrongfully terminated and abandoned at home by Defendant, Plaintiff has had to seek out his own medical care: As of June 29, 2023, Plaintiff was still in need of curative treatment and not at MMI (maximum medical improvement).

## MEMORANDUM OF LAW

Just as in *Doe v. Princess Cruise Lines, Ltd*., 657 F.3d 1204 (11th Cir. 2011), here, Defendant has not filed a Motion to Dismiss, but instead has filed a "Motion to Compel Arbitration and to Stay" and requested that the Court "*compel arbitration in accord with the Parties' agreement*," pointing out that the "*Court has jurisdiction to compel arbitration*." As such, it is Defendant who has asked the Court to determine whether the dispute is subject to arbitration and this issue is one proper for judicial determination. *Id.* at 1213; *see also Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S.Ct. 588, 591 (2002).

The scope of the Convention under the laws of the United States provides that an agreement falls under the Convention **if, and only if, it "arises out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section of this title.** *Bautista v. Star Cruises,* 396 F.3d 1289, 1297 (11th Cir. 2005). However, if either the 1) four jurisdictional prerequisites are not met or 2) one of the Convention's affirmative defenses applies, a Federal District Court must refrain from compelling arbitration. *Id* at 1294-95.

As the party seeking to compel arbitration, Defendant bears the burden of proving each jurisdictional prerequisite. *Rutledge v. NCL (Bahamas) Ltd.,* Case No. 14-Civ-23682-Moreno (S.D.Fla. Feb. 3, 2015). Failure to establish the jurisdictional prerequisites is fatal to a moving party's efforts to compel arbitration.

Plaintiff's Complaint contains a single count for "Intentional Infliction of Emotional

Distress" and there is no basis in law or contract to arbitrate this claim.

The arbitration provision at issue here is a "catch-all" type provision which is disfavored and scrutinized by courts. When determining whether specific causes of action are arbitrable, the court's analysis tends to focus on the foreseeability of the underlying incident as it pertains to the scope of employment contemplated by the contract. Matters that do not arise out of the employment relationship are not subject to forced arbitration.

"In the present case, the plain language of the arbitration provision imposes the limitation that, to be arbitrable, the dispute between Doe and the cruise line must relate to, arise from, or be connected with her crew agreement or the employment services that she performed for the cruise line. The arbitration provision is broad, but not limitless." *Doe*, 657 F.3d at 1217-18. "If the language about employment and services as an employee did not limit the scope of the arbitration provision, it would have no purpose, and that is an interpretative no-no." *Id.* at 1218. Courts have analyzed the "catch all" type of language found here which is nearly identical to the one in *Doe* where the Eleventh Circuit explained "related to" and "connected with" implied it fell within the generally understood scope of an employment relationship which did not include intentional torts. *Id.* at 1218-19.

Intentional torts are not foreseeable parts of an employment agreement or a typical employer/employee relationship. *Jones v. Halliburton Co.,* 583 F.3d 228, 236 (5th Cir. 2009). This is because they are not within the scope of an employment arbitration provision and compelling arbitration of these claims is improper because intentional torts do not normally arise out of the employment context as they would be actionable notwithstanding an employment agreement. See e.g. *Tolliver v. Kroger Co.*, 201 W.Va. 509, 498 S.E.2d 702, 713 (W.Va. 1997) (determining an assault and battery claim was not within the scope of the company's collective bargaining agreement for purposes of resolving the conflict through grievance procedures, that "[a]ssault and battery conduct is not a part of, nor a condition of employment").

*Doe v. Princess Cruise Lines, Ltd*., 657 F.3d 1204, involved an action by a crewmember against Princess Cruises, owned by Defendant, as a result of her drugging and group rape. The action included non-maritime common law tort claims for the cruise line's intentional refusal to allow the plaintiff to disembark for medical care, infliction of emotional distress in its treatment of the plaintiff after she reported the rape, spoliation of evidence in its destruction of the results of the rape kit, invasion of privacy, and fraudulent misrepresentations. Just as here, the defendant moved to compel arbitration, a motion which the District Court denied. In striking similarity to the present matter, the arbitration provision which the defendant cruise line sought to enforce provided as follows:

> ... [T]he Company and crew member agree that ***any and all disputes, claims, or controversies whatsoever*** (whether in contract, regulatory, tort or otherwise and whether pre-existing, present or future and including constitutional, statutory, common law, admiralty, ***intentional tort*** and equitable claims) ***relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company***, including but not limited to wage and benefit matters, employment applications, wrongful termination or discrimination claims, property loss or damage, *personal injury,* death or any other claim, no matter how described, pleaded or styled [collectively, "Disputes"] between the crew member and the Company or others, including against the master, shipowner, vessel, vessel operator, charterer, or any other third party, including also, but not limited to, Princess Cruises, P&O Cruises Australia, and Cunard Line, *shall be referred to and resolved exclusively by binding arbitration....*

*Doe,* 657 F.3d at 1214-1215 (emphasis added)

In affirming the District Court's denial of the defendant's motion to compel insofar as the common law tort claims (false imprisonment, intentional infliction of emotional distress spoliation of evidence, invasion of privacy and fraudulent misrepresentation), the 11th Circuit held that these claims did not "relate to, arise from, or are connected with the crew agreement and the services that she performed as an employee" and found as follows:

> In the present case, the plain language of the arbitration provision imposes the limitation that, to be arbitrable, the dispute between Doe and the cruise line ***must relate to, arise from, or be connected with her crew agreement or the employment services that she performed for the cruise line. The arbitration provision is broad, but not limitless***.

*If the cruise line had wanted a broader arbitration provision, it should have left the scope of it at "any and all disputes, claims, or controversies whatsoever" instead of including the limitation that narrowed the scope to only those disputes, claims, or controversies "relating to or in any way arising out of or connected with the Crew Agreement, these terms, or services performed for the Company." That would have done it, but the company did not do that. Instead, after including that limiting language, it now argues that we should ignore the limitation and force Doe to arbitrate any and all disputes, claims, or controversies without regard to whether they relate to, arise out of, or are connected with her employment or her service as an employee. That we cannot do.* See Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir.2007), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009), *as recognized by Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166, 1170-71 (2011) ("A party cannot be forced to arbitrate any dispute that the party has not agreed to submit to arbitration."). If the language about employment and services as an employee did not limit the scope of the arbitration provision, it would have no purpose, and that is an interpretative no-no. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 117 F.3d 1328, 1338 (11th Cir.1997) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." (internal marks and citation omitted)); Restatement (Second) of Contracts §203(a) (1981) ("An interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."); *see also In re Hedrick,* 524 F.3d 1175, 1189 (11th Cir.2008) (stating that a statutory interpretation that "renders one provision superfluous ... is an interpretative no-no").

*Contrary to Princess Cruise Lines' position, the terms used in the limiting language are not unlimited in scope. The term "arising out of" is broad, but it is not all encompassing. In construing that same term to determine whether a dispute arises out of a contract, we have explained that the focus is on "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties."* Telecom Italia, 248 F.3d at 1116; *see also Hemispherx,* 553 F.3d at 1367 ("We have previously focused on foreseeability as [the] proper standard for resolving the scope of an arbitration clause that covers disputes `arising out of or pursuant to' the contract between the parties."). "Arising out of" requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract. *See Telecom Italia,* 248 F.3d at 1116 ("Disputes that are not related — with at least some directness — to performance of duties specified by the contract do not count as disputes `arising out of' the contract, and are not covered by the standard arbitration clause.").

Similarly, "related to" marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond. As the Supreme Court has explained in the ERISA pre-emption context, "related to" is limiting language and "[i]f `relate to' were taken to extend to the furthest stretch of its indeterminacy," it would have no limiting purpose because "really, universally, relations stop nowhere." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quotation marks omitted). The same rationale applies here.

"Connected with" also connotes the necessity of some direct connection; if it did not, the term would be meaningless. *Cf. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 93 F.3d 1572, 1578 (Fed.Cir.1996) (construing a patent claim and stating that "[i]f, as Ethicon argues, `connected to' should be read broadly to include elements which are connected directly or indirectly, then ... the `connected to' limitation would be meaninglessly empty").

. . . . . *Counts VI, VII, VIII, IX, and X of Doe's complaint contain allegations and claims that do not arise from, do not relate to, and are not connected with the parties' crew agreement or the services that Doe performed for Princess Cruise Lines.* Count VI, a claim for false imprisonment, is based on the allegation that officers of the cruise ship would not permit Doe to leave the ship and go ashore to get medical treatment after she was raped. Count VII, a claim for intentional infliction of emotional distress, is based on allegations that a crew member drugged and raped Doe as well as allegations about the cruise line's actions after the rape, including its refusal to allow Doe to receive prompt and adequate medical care and its interrogation and intimidation of Doe. Count VIII, a claim of spoliation of evidence, is based on the allegation that the cruise line breached its duty to preserve evidence after Doe was raped. Count IX, a claim of invasion of privacy, is based on the allegation that cruise line officials breached their duty to protect Doe's confidentiality and privacy as a rape victim by disclosing her real name in an effort to intimidate and embarrass her. Count X, a claim of fraudulent misrepresentation, is based on allegations that officers of the cruise line who were on the ship repeatedly and falsely told Doe after she had been drugged and raped that she could not disembark the ship to get medical treatment and counseling by doctors of her own choosing.

All five of those claims involve factual allegations about how the cruise line and its officials treated Doe *after learning that she had been raped*, including allegations that she was kept on the ship against her will, that she was prevented from getting medical attention off the ship, that her rape kit was destroyed in the incinerator, and that her confidentiality as a rape victim was intentionally violated. Nothing about those allegations relate to, arise out of, or are connected with Doe's crew agreement or her duties for Princess Cruise Lines as a bar server.

*Id.* at 1217-1219 (citations in original) (emphasis added).

Similarly, *Rutledge v. NCL (Bahamas) Ltd.,* Case No. 14-Civ-23682-Moreno, involved an action by a crewmember against a cruise line for traditional seaman-injury claims, but also contained causes of action for negligence and strict liability for sexual harassment and sexual assault. Again, the defendant cruise line moved to compel arbitration. In denying the defendant's motion related to the sexual harassment and assault, the District Court, relying in large part on *Doe,* held that these claims were not "relat[ed] to" or "connected with" the plaintiff's employment as these were not foreseeable to her employment and found:

Plaintiff argues these claims are simply not "relat[ed] to" or "connected with" her employment as a ship's photographer, and therefore fall outside of the scope of the Arbitration Provision. Resp. at 7. Plaintiff points to *Doe v. Princess Cruise Lines, Ltd.,* 651 F.3d 1204(11th Cir. 2011), where the court held that Plaintiffs claims against Princess Cruise Lines — stemming from the rape of the plaintiff, a bar server who worked and lived aboard a cruise ship, and how the cruise line and its officials treated the plaintiff after learning she had been raped — were not subject to arbitration. The court in *Doe* looked to the limiting language of the subject arbitration agreement, finding that "to be arbitrable, the dispute between Doe and the cruise line must relate to, arise from, or be connected with her crew agreement or the employment services she performed for the cruise line." *Id.* at 1217-18. The Court further held that the terms "arising out of," "related to" and "connected with" necessarily "requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Id.* at 1218. The Court concluded, "[n]othing about those allegations relate to, arise out of, or are connected with Doe's crew agreement or her duties as a bar server." *Id.* at 1219.

***The Court finds Doe instructive. The limiting language in the Arbitration Provision between Defendant NCL and Plaintiff Rutledge is almost identical to the language seen in Doe. Here, the Arbitration Provision encompasses "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with Company," while the provision in Doe provided the claims "must relate to, arise from, or be connected with her crew agreement or the employment services she performed for the cruise line." Doe, 657 F.3d at 1217-18. The Court, similar to the court in Doe, rejects Defendant's argument that merely because Plaintiff was employed by Defendant and under the supervision and oversight of co-Defendant Naik, Plaintiffs sexual harassment and sexual assault claims must be related and connected to her employment.*** *See id.* at 1219 ("The incidental fact that Doe might not have been on the cruise ship if she had not been working for the cruise line does not mean that her claims relate to, arise from, or are connected with the crew agreement and the services that she performed for the cruise line.").

*Id.* at pp. 7-8 (S.D.Fla. Feb. 3, 2015) (citations in original) (emphasis added).

Most recently, in *Maglana, et al. v. Celebrity Cruises, Inc.,* Case No. 20-14206 (11th Cir. 2023), the 11th Circuit came to same conclusion related to the arbitrability of intentional torts. This case involved claims by Filipino crewmembers forced to remain aboard ship against their will by the defendant cruise line following the CDC's "no sail order" of March 2020 in response to the Covid outbreak. The plaintiff, on behalf of a putative class of Filipino crewmembers alleged "false imprisonment—forcing class members to remain on the ship—and intentional infliction of emotional distress—treating them 'like cattle' and causing mental anguish." *Id.* at p.5. The defendant cruise line moved to dismiss the complaint and compel arbitration based upon a

contractual and collective bargaining provision requiring arbitration of "[a]ll grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service." *Id.* at 6. Further, because they were Filipino, the plaintiff crewmembers' employment contracts incorporated the Philippines Overseas Employment Administration (POEA) standard contract which similarly provided that "[i]n cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators." *Id.* at 7. The District Court found that the plaintiffs' "intentional tort claims would not be viable but for their service on the ship," granted the defendant's motion to dismiss and compelled the matter to arbitration.

In reversing the District Court's order compelling arbitration, the 11th Circuit adhered to *Doe*, rejected the District Court's application of a "but for" test to intentional tort claims, and held:

> The same is true here. Maglana and Bugayong signed employment agreements that required arbitration of claims "relating to or in any way connected with the Seafarer's service" or "arising from [their] employment." They brought intentional tort claims based on the cruise line's actions after their termination: a false imprisonment claim for Celebrity's holding them "captive against their will" and an intentional infliction of emotional distress claim for Celebrity's treating them "like cattle." ***Under Doe's reasoning, these claims are not "an immediate, foreseeable result of the performance of the parties' contractual duties or [the plaintiffs'] services" as cruise line employees***. *Doe*, 657 F.3d at 1219. ***As in Doe, the employment agreements do not require arbitration of the intentional tort claims***.

*Maglana, et al. v. Celebrity Cruises, Inc.,* Case No. 20-14206, p. 12 (citations in original) (emphasis added).

Just as in the decisions above, the facts related to Plaintiff's claim for Intentional Infliction of Emotional Distress do not support an argument for foreseeable conduct and, consequently, do not sufficiently relate to Plaintiffs' employment with Defendant such that his intentional tort claim is subject to arbitration.

Case No. 23-CIV-22348-BLOOM/TORRES
Page 12

DATE: January 13, 2024

Respectfully submitted,

**EDUARDO J. HERNANDEZ, LLC**
*Attorneys for Plaintiff*
10691 N. Kendall Drive - Suite 109
Miami, Florida 33176
Telephone: (305) 567-0910
Facsimile: (786) 454-8905

By:   */s/ Eduardo J. Hernandez*
          EDUARDO J. HERNANDEZ
          Florida Bar No. 061451
          ehernandez@ejh-law.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 13th day of January 2024, via Email to all Counsel on the attached Service List.

**EDUARDO J. HERNANDEZ, LLC**
*Attorneys for Plaintiff*
10961 N. Kendall Drive - Suite 109
Miami, Florida 33176
Telephone: (305) 567-0910
Facsimile: (786) 454-8905

By:   */s/ Eduardo J. Hernandez*
          EDUARDO J. HERNANDEZ
          Florida Bar No. 061451
              ehernandez@ejh-law.com

## SERVICE LIST

| | |
|---|---|
| **Eduardo J. Hernandez** | **William Seitz** |
| Florida Bar No. 061451 | Florida Bar No. 78359 |
| ehernandez@ejh-law.com.com | wseitz@maselaw.com |
| EDUARDO J. HERNANDEZ, LLC | MASE, MEBANE & BRIGGS |
| 10691 N. Kendall Drive - Suite 109 | 2601 S. Bayshore Drive - Suite 800 |
| Miami, Florida 33176 | Miami, Florida 33133 |
| Tel.: (305) 567-0910 | Tel.: (305) 377-7770 |
| Fax.: (786) 454-8905 | Fax.: (305) 377-0080 |
| | |
| **Attorneys for Plaintiff** | **Attorneys for Defendant** |